UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LAKESHA R.,

                                        Plaintiff,

v.                                                          5:23-CV-00918
                                                               (AMN/ML)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

APPEARANCES:                              OF COUNSEL:


LAW OFFICES OF KENNETH HILLER        JUSTIN M. GOLDSTEIN, ESQ.
  *Attorneys for Plaintiff*
6000 North Bailey Avenue
Suite 1A
Amherst, New York 14226

U.S. SOCIAL SECURITY ADMIN.          GEOFFREY M. PETERS, ESQ.
  *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge

## REPORT-RECOMMENDATION

Plaintiff Lakesha R. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant"

or "Commissioner") denying her application for Supplemental Security Income ("SSI"). (Dkt.

No. 1.)  This matter was referred to me to prepare a Report and Recommendation to the

Honorable Anne M. Nardacci, United States District Court Judge, pursuant to 28 U.S.C. § 636(b)

and Local Rule 72.3(d). (Dkt. No. 4, 12.)  This case has proceeded in accordance with General

Order 18.

Currently before this Court are Plaintiff's motion for judgment on the pleadings and
Defendant's motion for judgment on the pleadings. (Dkt. Nos. 10, 13, 14.)  For the reasons set
forth below, this court recommends that the District Court grant Defendant's motion for
judgment on the pleadings, deny Plaintiff's motion for judgment on the pleadings, and affirm the
Commissioner's decision.

## I.    __PROCEDURAL HISTORY__

On January 7, 2021, Plaintiff protectively filed her SSI application alleging disability
dating from August 30, 2019. (Administrative Transcript ("T.") 263-264.)  Her application was
denied initially on June 16, 2021, and her request for administrative reconsideration was denied
on October 8, 2021. (T. 78-99, 116-122, 131-137.)  Plaintiff's request for a hearing was granted.
(T. 171-182.)  On April 13, 2022, Plaintiff and vocational expert ("VE") Andrew Vaughn
testified by telephone before Administrative Law Judge ("ALJ") Gretchen Greisler. (T. 33-59.)
The ALJ held a supplemental telephonic hearing on August 16, 2022 to receive testimony from
Dr. Lawrence Schaffzin, an ophthalmologist who reviewed Plaintiff's medical records as an
independent medical expert, and VE Robert Baker. (T. 60-72.)   The ALJ issued an unfavorable
decision on November 3, 2022. (T. 7-22.)

The Appeals Council denied Plaintiff's request for review on May 31, 2023. (T. 1-6.)
Plaintiff commenced this proceeding on July 28, 2023 to challenge the Commissioner's denial of
disability benefits. (Dkt. No. 1.)

## II.    __GENERALLY APPLICABLE LAW__

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may

support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

> **B.   Standard for Benefits[1]**

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

---

[1]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## III.   FACTS

As of the date of the ALJ's decision, Plaintiff was 42 years old. (T. 38, 263.) Plaintiff testified that she was unable to read or write. (T. 40.) She attended special education classes before leaving school upon completion of the eighth grade. (T. 40, 312.) At the time of her April 2022 hearing, Plaintiff lived with her twelve year old son and had three adult children. (T. 38, 548, 752.) Her employment history includes positions as a bartender, bus monitor, retail customer service representative, home health aide, and aide at an assisted living facility. (T. 312, 331-332.) She has not held full time employment since 2018. (T. 312.)

Plaintiff suffers from migraine headaches that cause blurred vision and light sensitivity, particular in her right eye. (T. 367, 393, 548.) Plaintiff reported that she has experienced migraines her entire life, but that her symptoms have worsened in recent years despite treatment. (T. 481, 548.) Plaintiff takes prescribed psychiatric medication for her diagnosed anxiety and depression, but reports continued symptoms including racing thoughts, problems maintaining

attention and concentration, and difficulty handling stressful situations. (T. 543, 871.)  Plaintiff's psychiatric medication was prescribed by her primary care provider, and she testified that the pandemic had made it difficult to establish care with a specialized mental health provider. (T. 52-53, 543.)  At the time of her April 2022 hearing, Plaintiff had been seeing a psychiatrist for approximately one month. (T. 51-51, 855.)

The record includes Plaintiff's medical and mental health treatment history.  Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV.    <u>THE ALJ'S DECISION</u>

Based upon her review of the administrative record, the ALJ found that Plaintiff had not engaged in substantial gainful activity after the application date of January 7, 2021. (T. 12-13.) At step two, the ALJ found that Plaintiff has the following severe impairments: "migraine, visual disturbance, anxiety disorder, depressive disorder, attention deficit hyperactive disorder, and borderline personality disorder." (T. 13-14.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment, including Listing 2.03 (Contraction of the Visual Field), 2.04 (Loss of Visual Efficiency or Visual Impairment), 11.02 (Epilepsy), 12.02 (Neurocognitive Disorders), 12.04 (Depressive, Bipolar and Related Disorders), Listing 12.06 (Anxiety and Obsessive-Compulsive Disorders), and Listing 12.08 (Personality and Impulse-Control disorders). (T. 14-16.)

Next, the ALJ found that Plaintiff could physically perform a full range of work at all exertional levels but with certain non-exertional limitations. (T. 16-21.) Specifically, the ALJ found:

- Plaintiff can understand, remember and carry out rote and routine instructions or tasks that require the exercise of little independent judgment or decision-making and can be learned from a short demonstration.

- She can perform work that does not require reading or writing.

- She can occasionally climb stairs and ramps, but cannot climb ladders, ropes or scaffolds or work at unprotected heights or in close proximity to dangerous machinery.

- She can tolerate occasional interaction with supervisors, coworkers and the public.

- She can perform tasks at a consistent, goal-oriented pace, but not at a fast, production rate pace, such as would be experienced in assembly line type of work.

- She can make simple decisions and tolerate occasional minor changes.

- She can work with objects larger than the size of a dime.

(T. 16.)

In making this RFC determination, the ALJ stated that she considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929" and Social Security Ruling ("SSR") 16-3p. (*Id.*) The ALJ further stated that she "fully considered" opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 416.920c. (*Id.*) The ALJ also considered Plaintiff's subjective complaints regarding pain, symptoms, and functional limitations and found that her statements "are not entirely consistent with the medical evidence and other evidence in the record . . . ." (T. 17.)

7

At step four, the ALJ relied on the VE testimony to find that Plaintiff was able to perform her past relevant work as a cleaner. (T. 21-22.)  Accordingly, the ALJ found that Plaintiff was not disabled from her application date of January 7, 2021 through the date of the ALJ's decision. (T. 22.)

## V.   ISSUES IN CONTENTION

Plaintiff argues that the ALJ improperly evaluated the medical opinion evidence, particularly the opinions addressing Plaintiff's mental health impairments, resulting in an RFC that is not supported by substantial evidence. (Dkt. No. 10 at 10-25.)  The Commissioner contends that the ALJ properly evaluated all of the record evidence, including the medical opinion evidence, and reached an RFC determination that is supported by substantial evidence. (Dkt. No. 13 at 7-26.)

For the reasons set forth below, this court recommends that the District Court grant Defendant's motion for judgment on the pleadings, deny Plaintiff's motion for judgment on the pleadings, and affirm the Commissioner's decision.

## VI.   RFC AND MEDICAL OPINION EVIDENCE

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v.*

*Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945; *see Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions a plaintiff is capable of performing and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150; *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2. Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[2] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no

---

[2] Plaintiff's SSI application date was January 7, 2021. (T. 263-264.) Thus, the new regulations apply in this case.

longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867–68, 2017 WL 168819 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the

evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

**B.    The ALJ's Evaluation of the Medical Opinion Evidence**

**1.    Summary of Medical Opinion Evidence**

The ALJ's evaluation of the medical opinion evidence figures prominently in Plaintiff's challenge to the disability determination. Therefore, this Court will summarize the various medical opinions in the record, and the ALJ's evaluation of each, before determining whether the ALJ's decision was supported by substantial evidence. The opinions are presented in the order that they were addressed by the ALJ. (T. 20-21.)

**a.    Consultative Examiner Dr. Elke Lorensen**

Dr. Elke Lorensen performed a consultative neurologic examination of Plaintiff on October 4, 2021. (T. 548-550.) Prior to the examination, Plaintiff described her history of migraines, the recent increase in her symptoms, and her unsuccessful attempt to treat the condition with Botox injections. (T. 548.)

During the consultative examination, Dr. Lorensen conducted a vision test that showed Plaintiff had 20/70 vision in the right and the left eye, and 20/50 vision combined. (T. 554.) She

11

observed that Plaintiff appeared in no acute distress, demonstrating a normal gait and the ability to walk on her heels and toes without difficulty. (T. 549.)  She did not require any assistance changing for the examination, getting on and off the examination table, or rising from a chair. (*Id.*)  Plaintiff demonstrated full strength in her arms and legs bilaterally, as well as intact hand and finger dexterity and full grip strength. (*Id.*)

In a "mini mental status" examination, Dr. Lorensen observed that Plaintiff maintained appropriate eye contact, and appeared oriented to time, person, and place. (T. 549.)  She saw no evidence of delusion or hallucinations, no indication of recent or remote memory impairment, and no suggestion of impairment in insight or judgment. (*Id.*)  Plaintiff displayed appropriate mood and affect. (*Id.*)

Based on this examination, Dr. Lorensen opined that Plaintiff had no gross neurological deficits. (T. 550.)  The ALJ found Dr. Lorensen's opinion to be "partially persuasive." (T. 20.) Although her opinion was consistent with the results of the single consultative examination, the ALJ noted that Dr. Lorensen did not have access to Plaintiff's full medical record, and the limited scope of the consultative examination did not allow assessment of all limitations imposed by Plaintiff's headaches. (*Id.*)

### b.  State Agency Medical Consultant Dr. S. Gandhi

The ALJ next considered the opinion of Dr. S. Gandhi, a state agency consultant who reviewed Plaintiff's then-current medical records as part of her request for administrative reconsideration.[3] (T. 20, 93-95.)  On October 7, 2021, Dr. Gandhi opined that Plaintiff had no

---

[3] Another state agency consultant, Dr. R. Mohanty, reviewed Plaintiff's medical records on June 15, 2021 but concluded that there was insufficient evidence to provide an opinion of Plaintiff's functional limitations. (T. 78.)  Plaintiff supplemented the record as part of her request for reconsideration.

exertional limitations. (T. 93.)  With regard to postural limitations, Dr. Gandhi opined that

Plaintiff could frequently climb ramps or stairs, but never climb ladders, ropes, or scaffolds. (T.

94-95.)  Dr. Gandhi further opined that Plaintiff should avoid all exposure to workplace hazards

and concentrated exposure to noise due to her history of migraines. (T. 95)  In a brief

accompanying narrative, Dr. Gandhi cited treatment notes addressing Plaintiff's migraines, Dr.

Lorensen's consultative examination report, and Plaintiff's own description of her daily

activities. (T. 95, 362-364, 388, 526-530, 548-550.)

The ALJ deemed Dr. Gandhi's opinion to be "more persuasive" than Dr. Lorensen's

because the state agency consultant had access to Plaintiff's then-current medical record, and

referred to clinical findings in the treatment notes that supported the opined limitations. (T. 25.)

### c.   Primary Care Provider Physician Assistant Joseph Morabito

Physician Assistant ("PA") Joseph Morabito has been Plaintiff's primary care

provider since at least September 2020. (T. 399-402.)  In addition to treating Plaintiff's

migraines, PA Morabito managed Plaintiff's psychiatric medication for depression and anxiety.

(T. 469-473, 871-872.)  He prepared an opinion on the functional limitations imposed by

Plaintiff's physical and mental impairments on February 8, 2022. (T. 871-874.)

With respect to physical impairments, PA Morabito opined that Plaintiff could walk two

or three city blocks without needing to rest or experiencing severe pain. (T. 876.)  He further

opined that Plaintiff could sit for up to two hours at one time or a total of at least six hours over

the course of a workday and stand or walk for more than two hours at one time or a total of at

least six hours over the course of the workday. (*Id*.)  He further opined that Plaintiff would need

to shift positions from sitting, standing, or walking at will, but would not require a greater than

usual number of breaks to accommodate her impairments. (T. 871-872.)

PA Morabito opined that Plaintiff could rarely (no more than five percent of the workday) lift or carry up to fifty pounds but identified no other lifting restrictions. (T. 872.) He also opined that Plaintiff could hold her head in a static position and could frequently turn and rotate her head in all directions. (*Id*.) In his opinion, Plaintiff could frequently use her hands to grasp, turn, or twist objects, perform fine manipulation with her fingers, and reach in all directions with her arms. (T. 872-873.)

PA Morabito opined that Plaintiff's impairments were likely to produce good days and bad days, and would frequently interfere with the attention and concentration needed to perform even simple work tasks. (T. 873.) He estimated that Plaintiff was likely to be absent from work about three days per month due to her impairments. (*Id*.) He also opined that Plaintiff was incapable of even low stress jobs, citing Plaintiff's statement that "she is too stressed." (T. 871.)

The ALJ found PA Morabito's opinion to be "partially persuasive." (T. 20.) The ALJ explained that the primary care provider's assessment of Plaintiff's physical limitations was generally consistent with the broader record, except for the suggested need for shifting positions at will. (T. 20-21.) The ALJ noted that PA Morabito did not provide an explanation for this restriction, and the ALJ found no support for this limitation in the record. (T. 20, 871-872.) The ALJ discounted PA Morabito's estimates for time off task and absences for the same reason. (T. 20-21, 873.) The ALJ also explained that she discounted PA Morabito's opinion of Plaintiff's mental health limitations, because the opined limitations appeared to be based solely on Plaintiff's representations when the provider was completing the opinion form. (T. 20-21, 1018.)

### d. Consultative Psychiatric Examiner Dr. Dennis Noia

Dr. Dennis Noia conducted a consultative psychiatric examination of Plaintiff on October 4, 2021. (T. 543-546.) Prior to the examination, Plaintiff reported her anxiety symptoms

14

included excessive apprehensiveness and worry, racing thoughts, restlessness, and difficulty

concentrating. (T. 543.) She also reported difficulty sleeping and a decreased appetite over the

past few months. (*Id*.)

During her examination, Dr. Noia found Plaintiff to have a cooperative demeanor with a

"fair" manner of relating, social skills, and overall presentation. (T. 544.) She demonstrated

coherent and goal-directed thought processes with no evidence of delusions, hallucinations, or

paranoia. (*Id.*) Dr. Noia characterized her ability to maintain attention and concentration as

"impaired," noting that Plaintiff was able to count and perform limited simple calculations but

had difficulty with "serial 7s and serial 3s because of poor arithmetic skills." (*Id*.) He also found

Plaintiff's memory to be impaired "possibly because of limited intellectual functioning." (*Id*.)

Overall, Dr. Noia opined:

> There is no evidence of limitation understanding, remembering, or applying
> simple directions and instructions, but she may have difficulty with complex
> directions and instructions. She appears to have mild limitations using reasoning
> and judgment to make work-related decisions. No evidence of limitation
> interacting adequately with supervision, coworkers, and the public; sustaining
> concentration and performing a task at a consistent pace; sustaining an ordinary
> routine and regular attendance at work; maintaining personal hygiene and
> appropriate attire; or being aware of normal hazards and taking appropriate
> precautions. She has mild limitations regulating emotions, controlling behavior,
> and maintaining well-being.

(T. 545.) In Dr. Noia's opinion, the examination results were consistent with psychiatric

problems, and suggested that Plaintiff's symptoms may "occasionally interfere with her ability to

function on a daily basis" (*Id.*)

The ALJ found Dr. Noia's opinion to be "partially persuasive." (T. 20.) In particular, the

ALJ found the consultative psychiatric examiner's opinion regarding Plaintiff's ability to

understand, remember, and apply information to be persuasive, because it was based on an in-

person examination of Plaintiff.  The ALJ also noted that Dr. Noia's opinions in this area were

supported by the opinion of Dr. Fernandez and mental health treatment notes that consistently

depicted no more than moderate mental health limitations. (T. 20, 91, 379, 393, 483, 485, 615,

747, 1018, 1050, 1095.)

### e.  State Agency Psychological Consultant Dr. P. Fernandez

Dr. P. Fernandez reviewed Plaintiff's then-current mental health records and prepared an

opinion of her functional limitations dated October 7, 2021. (T. 96-100.)  This review included

school records, therapy notes, and Dr. Noia's consultative examination report. (T. 85-89.)  Based

on this review, Dr. Fernandez opined that the record showed moderate limitations in Plaintiff's

ability to understand, remember, and carry out detailed instructions. (T. 96.) Otherwise, Dr.

Fernandez opined that Plaintiff had no significant mental health functional limitations. (T. 96-

98.)

In an accompanying narrative, Dr. Fernandez summarized the special education

assistance that Plaintiff had received due to her diagnosed learning disabilities. (T. 99, 312.)  The

state agency consultant also summarized treatment notes describing agitated behavior as one

symptom of Plaintiff's diagnosed anxiety and depression, while noting that most mental status

examinations reflected normal results. (T. 99, 381-382, 485-486.)

Based on the available evidence, Dr. Fernandez opined that Plaintiff: could understand

and remember simple and some detailed instructions and procedures; exhibited some

distractedness but was able to sustain a normal workday and work week; could interact in an

appropriate manner with co-workers, supervisors, and the public; and could adapt to changes in a

routine work setting and use appropriate judgment to make work-related decisions. (T. 99-100.)

The ALJ found Dr. Fernandez' opinion to be "partially persuasive." (T. 20.)  He noted that Dr. Fernandez's opinion regarding moderate limitations in understanding, remembering, and applying information was supported by the broader record, including Dr. Noia's consultative examination. (*Id*.)  However, the ALJ rejected Dr. Fernandez's opinion that Plaintiff had no other mental health limitations, in light of treatment notes that were more consistent with moderate limitations in social interaction, attention and concentration, and adaptation. (T. 18-20, 379, 393, 483, 485, 615, 747, 1018, 1050, 1095.)

### f.  Treating Psychiatrist Dr. Viral Goradia

In March 2022, Plaintiff began weekly counseling sessions with a psychiatrist, Dr. Viral Goradia. (T. 855, 858-868.)  Plaintiff had made previous attempts at obtaining specialized mental and behavioral health treatment but was unable to find a practice accepting new patients. (T. 1018.)

On March 18, 2022, Dr. Goradia prepared a psychiatric opinion of Plaintiff's mental health functional limitations based upon his three sessions with Plaintiff. (T. 855-857.)  He diagnosed Plaintiff with major depressive disorder, borderline personality disorder, and attention deficit hyperactivity disorder, and identified symptoms including generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, emotional withdrawal or isolation, and easy distractibility. (T. 855.)

In Dr. Goradia's opinion, Plaintiff was "unable to meet competitive standards" in two functional areas: maintaining attention for two hour segments and dealing with normal work stress. (T. 856.)  He further opined that Plaintiff was "seriously limited, but not precluded" in multiple other areas: accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting

17

behavioral extremes; responding appropriately to changes in a routine work setting; interacting appropriately with the general public; and maintaining socially appropriate behavior. (T. 856-857.)  Finally, he opined that Plaintiff's impairments would cause her to be absent from work more than four days per month. (*Id.*)  In a short narrative, Dr. Goradia explained that Plaintiff "has a serious learning disability which coupled with her depression, ADHD, and lack of social supports are seriously impairing her functioning." (T. 857.)

The ALJ deemed Dr. Goradia's opinion "not persuasive."  She reviewed the treatment notes from the psychiatrist's three sessions with Plaintiff but found that Dr. Goradia's notes reflect diagnoses of various mental health impairments without identifying any accompanying functional limitations. (T. 21, 858, 863, 866-867.)  The ALJ found that the most restrictive limitations in Dr. Goradia's opinion conflicted with Plaintiff's work history and her documented activities of daily living, as well as the psychiatric opinions from Dr. Noia and Dr. Fernandez. (T. 21).

### g.  Ophthalmologist Dr. Lawrence S. Schaffzin

The ALJ found that the medical records addressing Plaintiff's vision records were incomplete or inconclusive, partially due to Plaintiff's inability to attend a consultative vision examination. (T. 21, 344.)  In order to resolve the outstanding questions regarding Plaintiff's visual impairment, the ALJ heard testimony from Dr. Lawrence Schaffzin, a board certified ophthalmologist who reviewed Plaintiff's medical records. (T. 64-68.)  At a supplemental hearing held on August 16, 2022, Dr. Schaffzin diagnosed Plaintiff's vision impairment as "chronic angle closure glaucoma in the right eye" that resulted in a  "limitation of near acuity, far acuity, field of vision in the right eye only." (T. 65-66.)  He opined that Plaintiff should never climb ladders, ropes, or scaffolds and should avoid concentrated exposure to hazards such as

height and dangerous machinery. (T. 66.)  He further opined that Plaintiff would be able to avoid

normal workplace hazards but should avoid working with items smaller than a dime, such as nuts

and bolts. (T. 66-67.)

The ALJ found Dr. Schaffzin's opinion to be "persuasive" in light of his professional

expertise and his familiarity with agency disability program requirements. (T. 21.)  The ALJ also

noted that Dr. Schaffzin's testimony reflected a thorough review of Plaintiff's documented

treatment history. (T. 26.)  The ALJ's RFC determination incorporated Dr. Schaffzin's suggested

restrictions regarding workplace hazards and working with small objects. (T. 16.)

### 2. The ALJ's Evaluation of the Medical Opinion Evidence was Supported by Substantial Evidence.

Plaintiff contends that the ALJ failed to properly consider the supportability and

consistency of the medical opinion evidence and treated similar "check-box" opinions

differently, resulting in an RFC determination that is not supported by substantial evidence.

These arguments are unpersuasive, and do not present grounds for remand.

"At their most basic, the amended regulations require that the ALJ explain her findings

regarding the supportability and consistency for each of the medical opinions, 'pointing to

specific evidence in the record supporting those findings.'" *Raymond M. v. Comm'r of Soc. Sec.*,

No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. February 22, 2021) (quoting

*Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 11 (W.D.N.Y. 2021)).  The ALJ did so

here, by evaluating each physician's own narrative, the broader treatment record, and Plaintiff's

activities of daily living against the opined limitations.

Despite Plaintiff's contention, the ALJ did not reject or discount the opinions of PA

Morabito and Dr. Goradia simply because they utilized a check-box form.  Consistent with the

recent clarification provided by the Second Circuit, the ALJ appropriately considered whether each opinion was substantiated by clinical findings and other evidence in the record. *See Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022) ("[W]e take this occasion to reassert and clarify that the nature of an ALJ's inquiry in disability factfinding turns on the substance of the medical opinion at issue—not its form—and ultimately whether there is reasonable evidence in the record that supports the conclusions drawn by the medical expert . . ."). For example, PA Morabito did explain the basis for his opinion that Plaintiff would need an opportunity to switch positions throughout the day and would require excessive time off task. (T. 871, 873.) The ALJ properly reviewed both PA Morabito's own treatment notes and the broader medical record for supporting evidence on these points and found none.[4] *See Robert O. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1612 (TWD), 2022 WL 593554, at *13 (N.D.N.Y. Feb. 28, 2022) (proper consideration of medical opinions require evaluation of physician's own notes and the broader medical record). Plaintiff has not identified any clinical evidence that would refute the ALJ's conclusion.

The ALJ applied the same valid analytical approach to the opinion of Plaintiff's treating psychiatrist, Dr. Goradia. She reviewed the available treatment notes and found clinical

---

[4] Plaintiff contends that the ALJ improperly speculated that PA Morabito based his opinion on Plaintiff's subjective complaints. However, the ALJ accurately recited PA Morabito's written explanation that his opinion was partially based on Plaintiff's claim that "she is too stressed." (T. 871.) Likewise, treatment notes from February 8, 2022, the same date as PA Morabito's opinion, state that Morabito "[f]illed out disability paperwork with patient." (T. 1018.) It was not unreasonable for the ALJ to factor this into his evaluation of PA Morabito's opinion. *See Julie M. v. Comm'r of Soc. Sec.*, No. 8:23-CV-518 (MJK), 2024 WL 664413, at *11 (N.D.N.Y. Feb. 16, 2024) (finding ALJ could reasonably conclude that opinion completed with plaintiff's assistance had decreased value as an objective account of plaintiff's functional limitations). More crucially, the ALJ's assessment of the opinion was not solely based on these grounds, but rather on the ALJ's review of plaintiff's treatment records and an evaluation of the other medical opinions. *See Wiggins v. Comm'r of Soc. Sec.*, No. 3:15-CV-272 (ATB), 2016 WL 2993193, at *6 (N.D.N.Y. May 23, 2016) (distinguishing *Nix v. Astrue*, No. 07-CV-344, 2009 WL 3429616, at *1 (W.D.N.Y. Oct. 22, 2009)).

diagnoses but no discussion of functional limitations that corresponded to the opined limitations in handling stress, maintaining attention, and meeting regular attendance requirements. (T. 21, 856-868.)  The available notes reflect the initial weeks of Plaintiff's treatment relationship with Dr. Goradia, and primarily record the psychiatrist's concern that Plaintiff's learning disability would interfere with her understanding of the treatment plan and her medication regimen. (T. 859-860, 866.)  Plaintiff has not identified any supporting evidence that the ALJ overlooked on this point.

The ALJ also compared Dr. Goradia's restrictive opinion with the other specialized mental health opinions in the record from Dr. Noia and Dr. Fernandez. (T. 21, 96-98, 546.)  Such comparison was appropriate in evaluating the persuasiveness of Dr. Goradia's opinion.  *Mallorie M. v. Comm'r of Soc. Sec*., No. 3:21-CV-891 (MAD/ATB), 2022 WL 19078137, at *12 (N.D.N.Y. Dec. 22, 2022), *rep't and rec. adopted*, 2023 WL 2563209 (N.D.N.Y. Mar. 17, 2023) (remanding where ALJ failed to account for consistency of medical opinions with each other). As part of her decision, the ALJ also detailed Plaintiff's daily activities such as meal preparation and other care for her young son, chores such as laundry and cleaning, regular shopping, as well as attempts to work that included collection of unemployment benefits in 2020 and 2021. (T. 19, 273, 334, 545.)  The ALJ reasonably found that evidence of such activities was inconsistent with Dr. Goradia's restrictive opinion and Plaintiff's disability claim.  *See, e.g.*, *Medina v. Comm'r of Soc. Sec*., 831 F. App'x 35, 36 (2d Cir. 2020) (allowing ALJ to consider daily activities in determining consistency with alleged symptoms); *Herrington v. Berryhill,* No. 3:18-CV-315, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) (activities of daily living, including childcare, are appropriate factors for an ALJ to consider when assessing a plaintiff's claimed symptoms and limitations); *Nix v. Colvin*, No. 15-CV-0328-FPG, 2016 WL 3681463, at *7 (W.D.N.Y. July 6,

2016) ("[C]ourts throughout the United States have held that the issue of a plaintiff claiming to be disabled yet drawing unemployment insurance benefits may be considered in determining a plaintiff's credibility.") (internal quotation omitted).

Plaintiff argues that the ALJ applied a "double standard" to Dr. Fernandez's opinion when she found it more persuasive than the opinions from PA Morabito and Dr. Goradia. (Dkt. No. 10 at 24.)  This Court disagrees and finds that the ALJ applied the identical standard of review to all of the medical opinion evidence.[5]  For example, the ALJ's RFC determination incorporated Dr. Noia's opinion that Plaintiff had difficulty with complex directions and instructions but could understand, remember, and apply simple instructions because she found it consistent with the consultative examination report and Plaintiff's treatment history. (T. 16, 20, 545.)  Likewise, the ALJ found that Dr. Fernandez's description of moderate limitations in understanding, remembering, and applying information were supported by Dr. Noia's opinion and the broader treatment record. (T. 20.)  These limitations are reflected in the RFC that restricts Plaintiff to work tasks involving rote and routine instructions and simple decisions that can be learned by demonstration and do not require reading or writing, (T. 16.)

In contrast, the ALJ rejected those portions of the opinions from Dr. Noia and Dr. Fernandez finding no more than mild mental health limitations in areas such as maintaining attention and concentration, adapting to changes at work, and social interaction, in light of Plaintiff's documented need for psychiatric medication and recent commencement of outpatient therapy. (T. 18, 20, 615, 747, 1018, 1050, 1095.)  Based on those same records, the ALJ discounted Dr. Goradia's opinion that Plaintiff was "unable to meet competitive standards" in

---

[5] This includes the opinions of Dr. Lorensen, Dr. Gandhi, and Dr. Schaffzin.  Plaintiff did not raise any specific challenges to the ALJ's evaluation of these opinions.

these areas.

This Court also finds that the ALJ's consideration of Dr. Fernandez's opinion satisfies *Colgan*.  In *Colgan*, the Second Circuit found the ALJ erred when he rejected several "check-box" opinions from treating sources but adopted a state agency consultant's opinion that was similarly based on limited evidence and provided no explanation for its conclusions.  *Colgan*, 22 F.4th at 363-364.  In this case, Dr. Fernandez's opinion includes an explanation of the evidence upon which it was based, including citations to notes from Plaintiff's primary care provider and Dr. Noia's consultative examination report. (T. 99-100.)  Unlike *Colgan*, the ALJ compared Dr. Fernandez's opinion to the longitudinal treatment record, including evidence not available at the time of the state consultant's review.

Thus, the ALJ properly based her evaluation of the medical opinion evidence and the resulting RFC determination on a "careful consideration" of the longitudinal record that included relevant treatment notes, medical opinion evidence, Plaintiff's daily activities, and Plaintiff's testimony.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."); *Melissa P. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1007 (TJM), 2022 WL 669325, at *8 (N.D.N.Y. Mar. 7, 2022) (affirming disability determination where "ALJ did not rely only on a lack of objective findings . . . . [but] pointed to other evidence of the record, such as [the p]laintiff's own daily activities and other parts of the medical record  . . .").  In doing so, the ALJ in this case identified substantial evidence to support her evaluation of the medical opinion evidence, the RFC determination, and the ultimate determination of disability.  *See Matta*, 508 F. App'x at 56.

Plaintiff's remaining arguments do not present grounds for remand.  Plaintiff contends that the ALJ should have found the results of Dr. Noia's consultative examination inconsistent with the consultative examiner's overall opinion of Plaintiff's functional limitations. (Dkt. No. 10 at 23.)  Plaintiff also argues that the ALJ's decision did not highlight records more favorable to a disability determination, including instances of increased anxiety and documentation of the impact of Plaintiff's learning disabilities. (Dkt. No. 10 at 17-19.)  At best, these challenges are "premised upon a disagreement over how the ALJ resolved arguably conflicting evidence." *See Kimball v. Comm'r of Soc. Sec.*, No. 6:14-CV-0698 LEK/ATB, 2015 WL 4251163, at *9 (N.D.N.Y. July 13, 2015).  This court will not reweigh the evidence presented to the ALJ.  *See Warren v. Comm'r of Soc. Sec.*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-recommendation* adopted by 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

    **ACCORDINGLY**, it is

    **RECOMMENDED** that the Commissioner's decision be **<u>AFFIRMED</u>**, Defendant's motion for judgment on the pleadings (Dkt. No. 13) be **<u>GRANTED</u>**; Plaintiff's motion for

judgment on the pleadings (Dkt. No. 10) be **<u>DENIED</u>**; and Plaintiff's complaint (Dkt. No. 1) be

**<u>DISMISSED</u>**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written

objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE**

**APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

*Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.

Dated:    June 11, 2024
          Binghamton, NY

Miroslav Lovric
U.S. Magistrate Judge